ROBERT JAMES POPE, JR,

        Petitioner,

                                   Case No. 21-cv-0346-bhl

   v.

WARDEN PAUL KEMPER,

        Respondent.

## ORDER GRANTING WRIT OF HABEAS CORPUS

There is no question that Petitioner Robert James Pope Jr. has suffered violations of his constitutional rights. Convicted of murder in 1996, Pope instructed his appointed lawyer to pursue an appeal, but counsel abandoned him without filing a "Notice of Intent" form, a required step in Wisconsin's complicated postconviction process. Because the form was not filed, the state public defender never appointed postconviction/appellate counsel for Pope and, left unrepresented, his appellate rights expired. It took two decades, and the announcement of a new state habeas route, but the State of Wisconsin eventually agreed that Pope had been denied effective assistance of counsel and was entitled to have his appeal rights reinstated. Only then did anyone realize that counsel's ineffectiveness 20 years earlier had also resulted in the loss of Pope's trial transcripts. Unable to identify issues for the appeal or the state equivalent of an *Anders* brief, Pope's appellate counsel successfully moved for a new trial. Faced with having to retry him, the State backpedaled. It appealed the new trial order and convinced both the Wisconsin Court of Appeals and Wisconsin Supreme Court to expand a state procedural rule to deny Pope a new trial, leaving him with a reinstated right to appeal, decades after the events of trial had evaporated from memory, without transcripts to identify and argue alleged errors.

The fundamental question animating this habeas proceeding is whether that remedy—a direct appeal without transcripts—left Pope without a "meaningful appeal" in violation of his Sixth and Fourteenth Amendment rights. The Wisconsin Supreme Court majority never directly addressed this point; it cited none of the United States Supreme Court precedents discussing the

requirements of a meaningful appeal. Instead, the majority blamed Pope for failing to secure his own transcripts and extended a state procedural rule to reverse the new trial remedy. Because the Wisconsin Supreme Court's ruling cannot be squared with federal constitutional law, Pope is entitled to the writ. The State must provide him with a new trial or release him.

## BACKGROUND

On May 31, 1996, a jury convicted Pope on two counts of first-degree intentional homicide in connection with the murders of Anthony Gustafson and Joshua Viehland. *See State v. Pope*, 936 N.W.2d 606, 609-10 (Wis. 2019). On July 2, 1996, Pope was sentenced to life in prison without parole. *Id.* at 610. Court-appointed attorney Michael Backes represented Pope at trial. *Id.* at 624 (Bradley, J., dissenting).

Immediately after sentencing, Pope met with Backes to discuss his right to pursue postconviction relief and an appeal. *Id.* at 610. Both Pope and Backes signed an "SM-33" form, confirming that Backes would file a formal notice of intent to pursue postconviction relief (Notice of Intent). *Id.* Under Wisconsin law, a Notice of Intent must be filed within 20 days of sentencing. Wis. Stat. § 809.30(2)(b) (2021-22). Backes then absconded without making the promised filing.[1]

Backes' faithlessness had serious repercussions for Pope. The filing of a Notice of Intent sets in motion a series of other key steps in the Wisconsin postconviction process. Upon receiving a Notice of Intent, the clerk of court has five days to forward the notice to the state public defender. Wis. Stat. § 809.30(2)(c). The public defender then has 30 days to appoint postconviction counsel for the defendant and order trial transcripts from the court reporter. *See* Wis. Stat. § 809.30(2)(e). Because Backes failed to file the Notice of Intent, none of this happened. The Wisconsin Public Defender did not receive notice of Pope's desire to pursue postconviction relief, never appointed postconviction counsel for him, and never ordered his transcripts. As a result, Pope's appellate rights expired, and his trial transcripts went unordered.

Unsurprisingly, Backes did not announce to Pope or the state court that he was abandoning his client. For all Pope knew, Backes had filed the Notice of Intent as promised. After a period of silence, however, Pope began to have questions and tried to contact Backes. *See Pope*, 936

---

[1] This was not the first or only time Backes failed to meet his professional obligations. In 2005, nearly a decade after he abandoned Pope, Wisconsin's Office of Lawyer Regulation found Backes serially unreliable, and the Wisconsin Supreme Court publicly reprimanded him for abandoning four other clients at the postconviction stages of their proceedings. *See In re Disciplinary Proceedings Against Backes*, 697 N.W.2d 49 (Wis. 2005); *In re Disciplinary Proceedings Against Backes*, 705 N.W.2d 267 (Wis. 2005).

N.W.2d at 624 (Bradley, J., dissenting).  He sent at least two letters inquiring about his appeal but did not get a response to either one.  *Id.*  Pope and his mother also tried calling Backes, but like the letters, the calls went unanswered and unreturned.  *Id.*  After a year of these unrequited efforts, Pope reached out to the state public defender's office for help.  *Id.*  He only then learned that no Notice of Intent had ever been filed on his behalf.  *Id.*  The public defender agreed to provide him counsel *if* he could win back his forfeited right to appeal.  *Id.*

Pope had no choice but to set out on his own.  His first effort (which appears to have been correct procedurally) was to ask the Wisconsin Court of Appeals for an extension of time to file his Notice of Intent under Wis. Stat. Section 809.82(2)(a).  *Id.* at 610-11.  On September 25, 1997, without remanding for factfinding, the court of appeals simply denied Pope's *pro se* motion on grounds that he had not shown good cause for waiting 15 months (actually only 14) to bring it.  *Id.* at 611.  "Even assuming the truth of Pope's representations regarding the performance of trial counsel," the court held, "nothing in [Pope's] motion . . . would warrant a fifteen-month [sic] delay."  *Id.*

Still on his own, Pope tried a different approach.  On October 15, 1997, he returned to the circuit court and filed a Wis. Stat. Section 974.06 motion to reinstate his appellate rights.  *Id.*  He hoped the court would acknowledge his trial attorney's ineffective performance and grant him a second chance at an appeal.  *Id.*  Instead, the circuit court denied the motion, citing the prior court of appeals decision.  *Id.*  Pope unsuccessfully appealed this ruling too.  *Id.*[2]  On March 5, 1999, the court of appeals affirmed the circuit court's order.  *Id.* at 612.  The Wisconsin Supreme Court denied a subsequent petition for review as untimely, holding that Pope was really seeking review of the 1997 court of appeals' decision rejecting his original request for more time to file the Notice of Intent.  *Id.*  Four years later, Pope again filed a *pro se* motion to extend the time to submit his Notice of Intent.  *Id.*  The court of appeals denied the motion and deemed the issue settled.  *Id.*

A decade passed, but in 2014, Pope finally caught a break.  In *State ex rel. Kyles v. Pollard*, 847 N.W.2d 805, 810-14 (Wis. 2014), the Wisconsin Supreme Court recognized a new procedural path for defendants whose appointed counsel failed to file a Notice of Intent (apparently a recurring

---

[2] As part of his appeal, Pope pleaded indigency and asked for a free copy of his trial transcripts.  *Pope*, 936 N.W.2d at 611.  The court of appeals tasked the circuit court with adjudicating this request under Wis. Stat. Section 814.29(1).  *Id.*  On December 15, 1997, the circuit court concluded that Pope was not entitled to free transcripts because, still without a lawyer, he had "not set forth an arguably meritorious claim for relief."  (ECF No. 7-4 at 11.)  Thereafter, and still acting without counsel, Pope filed a statement on transcripts per Wis Stat. Sections 809.11(4) and 809.16, asking for his sentencing transcript.  *Pope*, 936 N.W.2d at 612.  As a result, that is the only transcript now available.

problem). The Court held, as a matter of first impression, that an ineffective assistance of counsel claim premised on trial counsel's failure to file a Notice of Intent must be brought in a "*Knight* petition," for habeas relief filed with the court of appeals. *Id.* at 814. Less than a month after *Pollard*, Pope filed his own *Knight* petition. (ECF No. 8 at 3.) He argued that Backes was ineffective for failing to file the Notice of Intent. *See Pope*, 936 N.W.2d at 612. This time, the court of appeals remanded the case to the circuit court for factfinding. *Id.* After taking evidence, the circuit court found that (1) Pope had twice written Backes seeking information about his "appeal and transcripts" within the 20-day window for filing his Notice of Intent; (2) despite these efforts, Backes never filed Pope's Notice of Intent; and (3) Pope had "been acting pro-se attempting to reinstate his appellate rights since 1996." (ECF No. 7-4 at 81-83.) On August 16, 2016, based on these findings, Pope and the State filed a joint stipulation to reinstate his direct appeal rights. (*Id.* at 84-86.) The stipulation provided that the parties agreed to "reinstatement of Mr. Pope's direct appeal deadlines under Wis. Stat. § 809.30, and for an order extending the deadline for filing a notice of intent to pursue postconviction relief to 20 days following issuance of the court's order, with concomitant dismissal of the petition for writ of habeas corpus as moot." (*Id.* at 85.) This stipulation effectively reversed the outcome of Pope's first request to the Wisconsin Court of Appeals in 1997.

On October 4, 2016, over 20 years after his conviction, Pope timely filed a Notice of Intent. *See Pope*, 936 N.W.2d at 613. He and his appointed appellate counsel then encountered a new obstacle. Wisconsin law requires court reporters to maintain trial notes for only 10 years. Because Backes did not file Pope's original Notice of Intent, the state public defender never had any reason to contact the court reporter to obtain Pope's trial transcripts within this 10-year period, and the reporter no longer had any notes from which transcripts could be produced. *Id.* Pope's counsel searched in vain for an alternative, even communicating with Backes, but 20 years on, no one involved with Pope's trial had any recollection of it. *Id.* at 626 (Bradley, J., dissenting). Accordingly, counsel had nothing to review and no ability to identify any potential trial errors to raise on appeal. *Id.*

Out of options, counsel filed a Wis. Stat. § 809.30 motion for a new trial, arguing that the lack of trial transcripts for his reinstated appeal denied Pope his constitutional and statutory right to a meaningful appeal. *Id.* at 613. The State opposed the motion. *Id.* The circuit court sided with Pope, finding that "without even a portion of the trial transcript, it would be impossible to

make a claim of error," and, therefore, "there was 'no other option but to order a new trial in [the] case.'" *Id.* The State appealed, insisting that while it had stipulated to reinstate Pope's appellate rights, it had not agreed he would get a new trial. In an unpublished decision, the Wisconsin Court of Appeals agreed and reversed. Relying upon *State v. Perry*, 401 N.W.2d 748 (Wis. 1987) and *State v. DeLeon*, 377 N.W.2d 635 (Wis. Ct. App. 1985), the court of appeals held that a defendant seeking a new trial based on incomplete transcripts must make a facially valid claim of arguably prejudicial error arising from the portion of the missing transcripts. *See State v. Pope*, No. 2017AP1720-CR, 2018 WL 5920615, at *5-6 (Wis. Ct. App. Nov. 13, 2018). Because Pope had failed to satisfy this burden, the court of appeals held it was error for the trial court to grant him a new trial. *Id.*

Pope then took his case to the Wisconsin Supreme Court. In her opening brief, Pope's counsel asked the Court to "hold that a transcript deficiency that deprives a defendant of the ability to determine whether any potentially meritorious issues exist for appeal constitutes prejudice because it denies the right to meaningful appellate review." (ECF No. 7-3 at 17.) In support, she cited both the Wisconsin and U.S. Constitutions. (*Id.* at 17-18.) She first noted that "[a]n appeal of a final judgment or order to the Court of Appeals is a matter of right and constitutionally guaranteed in Wisconsin." (*Id.* at 17.) She also argued that "the due process and equal protection provisions of the Fourteenth Amendment require that sufficient procedures must assure adequate appellate review, including production of transcripts." (*Id.* at 18 (citing *Griffin v. Illinois*, 351 U.S. 12 (1956); *Eskridge v. Wash. State Bd. of Prison Terms & Paroles*, 357 U.S. 214 (1958); *Draper v. Washington*, 372 U.S. 487 (1963).) She added that "where a transcript deficiency is such that appellate counsel cannot make a determination whether or not any arguable issues exist for appeal, the statutory and constitutional obligations of the no-merit procedure of Wis. Stat. § 809.32 and *Anders v. California*, 386 U.S. 738 (1967) cannot be discharged." (*Id.* at 31.) With this foundation laid, she argued that the *Perry/DeLeon* procedure should not apply to Pope. (*Id.* at 36.)

In her reply brief, counsel elaborated on the apparent conflict between the *Perry/DeLeon* procedure, as applied to Pope, and the Sixth Amendment. As she wrote, "it is well-established that an appellate court cannot 'condition the restoration of a defendant's appellate rights forfeited by ineffective counsel on proof that defendant's appeal had merit.'" (ECF No. 7-5 at 12 (quoting *Garza v. Idaho*, 139 S. Ct. 738, 748 (2019); citing *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000); *Rodriguez v. United States*, 395 U.S. 327, 330 (1969).) She further noted that "Mr. Pope had the

right to the effective assistance of counsel on direct appeal." (*Id.* (citing *Douglas v. California*, 372 U.S. 353, 355-58 (1963); *Evitts v. Lucey*, 469 U.S. 387, 396-97 (1985)). Thus, "to the extent that any procedural shortcomings existed in his *pro se* filings, it is the State that bears the cost: 'if the procedural default is the result of ineffective assistance of counsel, the Sixth Amendment itself requires that responsibility for the default be imputed to the State.'" (*Id.* at 12-13 (quoting *Coleman v. Thompson*, 501 U.S. 722, 724 (1991).) And she closed with a word from the Seventh Circuit: "The Constitution does not permit a state to ensnare an unrepresented defendant in his own errors and thus foreclose access to counsel." (*Id.* at 13 (quoting *Betts v. Litscher*, 241 F.3d 594, 596 (7th Cir. 2001).)

In a 4-3 decision issued December 17, 2019, the Wisconsin Supreme Court affirmed the court of appeals. The majority acknowledged a defendant's right to appeal under the Wisconsin Constitution but remained silent on the corresponding federal constitutional right or the many United States Supreme Court cases delineating the contours of that right. *See Pope*, 936 N.W.2d at 614. It then undertook a lengthy explanation of the history and purpose of Wisconsin's *Perry/DeLeon* procedure, which governs how courts should respond when portions of a defendant's trial transcripts are unavailable. *Id.* at 614-16. Against that backdrop, the majority then announced it was extending the *Perry/DeLeon* rule to situations, like Pope's, where a defendant's entire trial transcript is missing. *Id.* at 616-18. The majority did not explain how its application of the rule to Pope, a defendant whose appointed counsel's ineffectiveness left him without transcripts, was consistent with the United States Supreme Court's Sixth or Fourteenth Amendment precedents.

The Wisconsin Supreme Court also refused Pope's request to "carve out an exception to the *Perry/DeLeon* threshold requirement that the appellant assert a facially valid claim of arguably prejudicial error when the entire transcript is unavailable." *Id.* at 618. In response to counsel's plea that it was impossible to identify prejudicial error without transcripts, the majority blamed Pope for not securing them. It scolded Pope for waiting 14 months to move for an extension of time to file his original Notice of Intent. *Id.* It then insisted that if Pope wanted transcripts for his appeal, he should have ordered and paid for them "on his own." *Id.* at 619. Finally, it rejected the suggestion that the State bore any responsibility for Pope's procedural failings. Although he was acting *pro se* after being "inexcusabl[y]" abandoned by counsel, the majority held Pope, himself, responsible for not filing the Notice of Intent and not ordering his trial transcripts. *Id.* at 620.

The three-justice dissent criticized the majority for using court-created procedural rules to "override constitutional rights." *Id.* at 622 (Bradley, J., dissenting). It emphasized that, when an appellant is denied constitutionally guaranteed rights like effective assistance of appellate counsel and trial transcripts, "requiring him to assert a facially valid claim of prejudicial error without any basis for doing so imposes a condition no appellant could meet" and constitutes the "trampling of his constitutional rights." *Id.* at 629. The dissent also called out the majority for "inaccurately conclud[ing] that Pope 'sat on his rights for 14 months'" when "[t]he record itself refutes this statement." *Id.* And it cited the bevy of relevant Supreme Court cases that the majority failed to address. *Id.* at 621-22.

Having lost at the Wisconsin Supreme Court, Pope unsuccessfully petitioned the United States Supreme Court for a writ of certiorari. *Pope v. Wisconsin*, 141 S. Ct. 272 (2020) (Mem.). He filed a petition for writ of habeas corpus with this Court as a last resort.

## LEGAL STANDARD

A federal court is empowered to consider a state prisoner's application for a writ of habeas corpus when the petitioner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Obtaining such relief is intentionally difficult. Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a federal court typically defers to state-court rulings. When this deference applies, a state-court conviction can be upset only if a petitioner shows that the "last reasoned state-court decision" on the merits, *Johnson v. Williams*, 568 U.S. 289, 297 (2013), "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). Both prongs are hard to satisfy. *See Harrington v. Richter*, 562 U.S. 86, 102 (2011) ("If this standard is difficult to meet, that is because it was meant to be.").

But deference is appropriate only where the state courts actually reached the merits of a federal claim. *See Cone v. Bell*, 556 U.S. 449, 472 (2009) (holding that when state courts do not reach the merits of a federal claim, "federal habeas review is not subject to the deferential standard that applies under AEDPA"). In most circumstances, resolution on the merits is presumed. "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication

or state-law procedural principles to the contrary." *Richter*, 562 U.S. at 99. This presumption, however, "may be overcome when there is reason to think some other explanation for the state court's decision is more likely." *Id.* at 99-100.

Whether the presumption applies here is not an easy call. The Wisconsin Supreme Court majority made only passing reference to federal law in analyzing Pope's case. *See Pope*, 936 N.W.2d at 616 (mentioning "additional support for [its] conclusion in federal law"). The majority opinion does not cite or discuss any of the relevant federal constitutional standards or Supreme Court precedents. But these omissions are not necessarily determinative: "Deference under § 2254(d) does not require the state court to have expressly considered federal law, much less to have cited Supreme Court precedent." *See Makiel v. Butler*, 782 F.3d 882, 905 (7th Cir. 2015). Thus, although the majority decision does not even hint at consideration of the federal constitutional issues at stake, this Court will apply AEDPA deference, given the presumption of adjudication on the merits and the fact that "a generous reading of the state-court opinion" might support finding that the Wisconsin Supreme Court addressed the merits of Pope's federal claims. *See Brady v. Pfister*, 711 F.3d 818, 824 (7th Cir. 2013).

This makes Pope's task harder, though not impossible. While AEDPA demands deference, "'deference does not imply abandonment or abdication of judicial review,' and 'does not by definition preclude relief.'" *Brumfield v. Cain*, 576 U.S. 305, 314 (2015) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)). "Where the record shows that state courts have strayed from clearly established federal law, [federal courts] can and do grant relief." *Dassey v. Dittmann*, 877 F.3d 297, 302 (7th Cir. 2017). The question is "whether the state court decision 'was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Id.* (quoting *Richter*, 562 U.S. at 103). This is uncommon but not unheard of. *See Jones v. Calloway*, 842 F.3d 454 (7th Cir. 2016); *McManus v. Neal*, 779 F.3d 634 (7th Cir. 2015); *Shaw v. Wilson*, 721 F.3d 908 (7th Cir. 2013).

## ANALYSIS

Pope contends that he is entitled to habeas relief because he is in custody in violation of his federal constitutional rights. More specifically, he maintains that the State of Wisconsin has left him without a "meaningful" direct appeal in violation of the Sixth and Fourteenth Amendments. Some of the premises supporting this argument are undisputed. Pope's counsel abandoned him without notice and without keeping his promise to file a Notice of Intent form,

necessary to put Pope's direct appeal in motion. Counsel's failure resulted in, among other things, the state public defender not appointing postconviction counsel to assist Pope, which, in turn, led to the lapse of his direct appeal rights. A clearer violation of the Sixth Amendment is hard to fathom. It is black-letter law that when a defendant instructs his lawyer to file an appeal and the lawyer instead disappears into the ether, "the defendant has been deprived, not of effective assistance of counsel, but of *any* assistance of counsel on appeal," which "is a *per se* violation of the sixth amendment." *Castellanos v. United States*, 26 F.3d 717, 718 (7th Cir. 1994) (citing *United States v. Cronic*, 466 U.S. 648, 658-59 (1984). At that point, "prejudice is presumed," and direct appeal rights are reinstated "with no need for a further showing of [the defendant's] claims' merit." *Garza*, 139 S. Ct. at 744, 747 (citation omitted).

The State accepts all of this. It concedes that Pope was "entitled" to reinstatement of his direct appellate rights based on Backes' misconduct. (ECF No. 11 at 18.) But it insists that reinstated appellate rights, two decades late and with missing trial transcripts, is all he gets. (*Id.*) In taking this position, the State ignores the full consequences of appointed counsel's ineffectiveness. When Backes abandoned Pope and failed to file the Notice of Intent, he cost Pope his right to a direct appeal. But that same malfeasance also led to the loss of Pope's transcripts. Because counsel did not file the Notice of Intent, the public defender did not order Pope's transcripts, and they are now forever lost and beyond reconstruction. While the State remedied the first consequence (albeit two decades late) it has left him without a remedy for the latter. The United States Supreme Court has made clear that trial transcripts or their equivalent are essential to a meaningful direct appeal. But because of the State's own failures, Pope no longer has them, and the Wisconsin Supreme Court's decision did not remedy this clear constitutional violation. Accordingly, Pope is in custody in violation of his constitutional rights and is therefore entitled to a writ of habeas corpus.

## I.    The State of Wisconsin Denied Pope His Right to a Meaningful Appeal.

The Supreme Court has long recognized that criminal defendants have the right to a *meaningful* direct appeal from their convictions. *See Douglas*, 372 U.S. at 358. The Court has also confirmed repeatedly that this right is not one of mere form. At bare minimum, the Sixth and Fourteenth Amendments require the State to provide indigent defendants with copies of their trial transcripts (or some equivalent) and effective, appointed counsel on direct appeal. *See Griffin*, 351 U.S. at 19-20; *Eskridge*, 357 U.S. at 215-16; *Evitts*, 469 U.S. at 396-97. The right to a

meaningful direct appeal is so fundamental that it is a *per se* constitutional violation when trial counsel fails to preserve a client's appellate rights. *See Flores-Ortega*, 528 U.S. at 477; *Garza*, 139 S. Ct. at 744, 747.

The Wisconsin Supreme Court majority opinion does not address any of these United States Supreme Court precedents or discuss their implications for Pope. On habeas, the State tries to distinguish them, but its efforts are unavailing. In the end, the State is left to resort, as the Wisconsin Supreme Court majority did, to blaming Pope for the predicament in which his appointed counsel placed him. This too cannot be squared with established constitutional principles, and it is not an excuse for failing to confront the violation of Pope's rights.

A.    **United States Supreme Court Precedent Clearly Establishes an Indigent's Right to Trial Transcripts or Their Equivalent as Part of a Meaningful Appeal.**

The Supreme Court first recognized a criminal defendant's right to transcripts on appeal in *Griffin v. Illinois*, 351 U.S. 12 (1956). *Griffin* involved two indigent Illinois inmates who had been denied free copies of trial transcripts needed to prosecute their appeals. *Id.* at 13. Under then-prevailing Illinois law, only defendants sentenced to death were provided free transcripts. *Id.* at 14. All others, "whether indigent or not," had to buy transcripts themselves. *Id*. The Supreme Court held that Illinois' rule violated the federal Due Process and Equal Protection Clauses. *Id.* at 17. As the Court explained, "[b]oth equal protection and due process emphasize the central aim of our entire judicial system—all people charged with crime must, so far as the law is concerned, 'stand on an equality before the bar of justice in every American court.'" *Id*. (quoting *Chambers v. Florida*, 309 U.S. 227, 241 (1940)). The opinion continued: "Surely no one would contend that either a State or the Federal Government could constitutionally provide that defendants unable to pay court costs in advance should be denied the right to plead not guilty or to defend themselves in court." *Id*. And the Court found "no meaningful distinction between a rule which would deny the poor the right to defend themselves in a trial court and one which effectively denies the poor an adequate appellate review accorded to all who have money enough to pay the costs in advance." *Id*. at 18. As a result, it held that States must either provide indigent defendants a stenographer's transcript or "find other means of affording adequate and effective appellate review." *Id*. at 20.

The State downplays the significance of *Griffin*, calling Pope's invocation of the case "inapt." (ECF No. 11 at 27.) It insists *Griffin* "simply prohibits a state from discriminating between the wealthy and the indigent with respect to access to transcripts that exist; it does not create a general constitutional right to have a transcript of a trial preserved for any particular period

of time or even created in the first instance." (*Id.*) But, of course, Pope *was* indigent and thus entitled to State-appointed counsel. And appointed trial counsel's faithless conduct led to the loss of Pope's transcripts. A defendant with resources would not have found himself in Pope's predicament. Moreover, *Griffin* makes clear the central importance of transcripts to an appeal and the constitutional duty of a State to provide them to indigent defendants.

Indeed, since *Griffin*, the Supreme Court has consistently reaffirmed "that the State must provide an indigent defendant with a transcript of prior proceedings [or its equivalent] when that transcript is needed for an effective defense or appeal." *Britt v. North Carolina*, 404 U.S. 226, 227, 227 n.1 (1991) (collecting cases); *see Eskridge*, 357 U.S. at 215-16 (reaffirming that States must afford indigent defendants adequate appellate review). *Britt* arose after the petitioner's "three-day murder trial ended in a mistrial." *Id.* at 226. "A retrial was scheduled for the following month," and "[i]n the interim, [the] petitioner filed a motion alleging that he was indigent, and asking for a free transcript of the first trial." *Id.* The State declined to furnish one, and the Supreme Court "granted certiorari to determine whether the rule of *Griffin* . . . applie[d] in this context." *Id.* at 227. Eight of the nine justices agreed that it did (Justice Blackmun would have dismissed the petition for certiorari as improvidently granted), but the Court split 7-2 on the rule's application. *Id.* at 226. The majority held *Griffin* was not violated because the petitioner could not establish that he *needed* transcripts for his retrial. *Id.* at 227, 230. The majority identified "two factors that are relevant to the determination of need: (1) the value of the transcript to the defendant in connection with the appeal or trial for which it is sought, and (2) the availability of alternative devices that would fulfill the same functions as a transcript." *Id.* at 227. Notably, both the majority and dissent recognized as almost obligatory the value of transcripts to a criminal defendant pursuing an appeal. *Id.* at 228 ("We agree with the dissenters that there would be serious doubts about the decision below if it rested on petitioner's failure to specify how the transcript might have been useful to him. Our cases have consistently recognized the value to a defendant of a transcript of prior proceedings, without requiring a showing of need tailored to the facts of the particular case."). The split occurred over the second factor, with the majority concluding that the court reporter's ability to read back his notes of the mistrial represented an adequate alternative to transcripts. *Id.* at 229.

The alternative that sufficed for Britt is not available to Pope. The court reporter's notes are gone. And the record confirms that despite efforts, Pope's counsel has been unable to

reconstruct them or to develop any substitute. The State has not suggested any remotely sufficient equivalent. Yet the State claims it has complied with its constitutional obligations simply by reinstating Pope's direct appeal, disregarding the central importance of transcripts in making that appeal meaningful. The State's affirmative duty to provide transcripts or an adequate alternative is not something it can simply handwave away. In *Britt*, the majority opinion commented that the state could not excuse its failure to provide transcripts based simply on the defendant's failure to prove prejudice. *See Britt*, 404 U.S. at 228 ("[T]here would be serious doubts about the decision below *if* it rested on *petitioner's failure to specify how the transcript might have been useful to him*.") (emphasis added); *see also Roberts v. LaVallee*, 389 U.S. 40, 42-43 (1967) (finding presumptive value in trial transcripts over the dissent of Justice Harlan, who argued "at no time has petitioner suggested any use to which the preliminary hearing transcript could have been put, although he is in a position to know what it contains").

The State also tries to distinguish these seminal federal cases by arguing that when appointed counsel's incompetence costs a defendant his direct appeal, the only available remedy is reinstatement of that appeal. (ECF No. 11 at 18, 24.) It notes that when counsel was found to be ineffective by failing to perfect his client's appeal in *Garza* and *Flores-Ortega*, the Court ordered his appellate rights reinstated and did not order a new trial, something it calls an "automatic reversal." (*Id*. at 18-19, 24.) This argument has two major flaws. First, the State ignores that Backes' misconduct had more than one consequence. It caused not only the lapse of Pope's right to a direct appeal, but also the failure to preserve his trial transcripts. By leaving Pope with a reinstated appeal, but without transcripts or their equivalent, the Wisconsin Supreme Court majority denied Pope a remedy for the second consequence of his appointed counsel's incompetence. Second, the State's argument improperly confuses the parameters of its constitutional duties with the remedies available for violations of those duties. *Garza* and *Flores-Ortega* both address the scope of a state's constitutional *duties* with respect to providing competent counsel to indigent defendants. Both also prescribed remedies for the particular violations that occurred. But neither case purports to limit the remedies available. While reinstatement of the defendants' appellate rights was sufficient in both *Garza* and *Flores-Ortega* to restore the defendants in those cases to the positions they would have occupied but for their appointed counsel's failings, that is not the case for Pope. The majority decision left him to suffer the adverse consequences of counsel's conduct without any remedy. He had a reinstated direct appeal but

without the transcripts necessary to effectuate that appeal in a meaningful fashion. Thus, the State remedied only part of the consequences of the constitutional violation he suffered at appointed counsel's hands.

*Anders v. California*, 386 U.S. 738, 744 (1967), underscores the problem with the State's position. Under *Anders*, before an indigent's appointed appellate attorney concludes his case is hopeless, she must conscientiously review it and file a brief "referring to anything in the record that might arguably support the appeal." Faithful compliance with this edict requires the State to at least furnish counsel *something* to review. After all, "[a] first appeal as of right . . . is not adjudicated in accord with due process of law if the appellant does not have the effective assistance of an attorney." *Evitts*, 469 U.S. at 396. Read in conjunction with *Griffin* and *Douglas* (both of which *Anders* cites and discusses), *Anders* clarifies that an attorney cannot provide effective assistance consistent with the Fourteenth Amendment Due Process Clause if the State denies her the ability to review her client's case. *Anders*, 386 U.S. at 741-42. *Griffin*, itself, emphasized this, holding that denying an indigent a copy of his trial transcripts violated not only equal protection but also "due process principles because it decided the appeal in a way that was arbitrary with respect to the issues involved." *Evitts*, 469 U.S. at 404 (citing *Griffin*, 351 U.S. at 19).

To the extent the State claims this Court lacks the power to order a new trial as a habeas remedy, it is also mistaken. The Seventh Circuit has twice applied *Griffin* and its progeny to criminal defendants faced with Pope's plight. In *Sutton v. Lash*, 576 F.2d 738 (7th Cir. 1978), the Indiana State courts denied two convicted criminal defendants access to free copies of their trial transcripts on appeal "because their petition[s] failed to show merit in the proposed appeal." *Id.* at 740, 744. Years later, when the defendants again attempted to obtain copies of their trial transcripts to support a case for postconviction relief, they learned that "matters essential to the trial record, including the stenographic notes," had already been destroyed. *Id.* at 741. The Seventh Circuit observed, at the time they requested their transcripts, "[u]nder *Griffin*, . . . the [defendants] were entitled to secure a transcript or, alternatively, the state was obligated to provide adequate appellate review." *Id.* at 742. And "[b]ecause the [defendants] did not waive the right to full and adequate review of their convictions," the Court held that they "suffered the kind of de facto denial of appeal by refusal of a transcript found by the Supreme Court in *Griffin* to result in a denial of equal protection of the laws." *Id.* at 744. After ruling out the possibility of reconstruction, the Seventh Circuit agreed that, while the defendants were not entitled to

unconditional release, they were to be remanded to the State court with orders to vacate the judgment of conviction and promptly conduct a new trial. *Id.* at 746. Similarly, in *United States ex rel. Westbrook v. Randolph*, 259 F.2d 215 (7th Cir. 1958), the Seventh Circuit considered the case of a criminal defendant who offered to purchase his transcripts in the first instance, but never received them because the court reporter fell ill "and was unable to prepare the transcript" and his notes were then "lost or destroyed." *Id.* at 216. The Court held that, although the defendant's "indigency had nothing to do with his failure to obtain the transcript," he was still "denied his right of full appeal due to no fault of his own." *Id.* at 217. And it ultimately ordered the defendant remanded "to the state court which tried him originally with instructions to vacate the judgment of conviction *and to grant him a new trial.*" *Id.* at 218 (emphasis added).

Like in *Sutton*, reconstruction of Pope's transcripts is not possible, as the Milwaukee County Circuit Court found. (*See* ECF No. 7-4 at 122.) In these circumstances, the proper remedy "is to award the petitioner the maximum relief that he could have obtained if his appeal had been properly perfected and he had been successful in prosecuting it." *Sutton*, 576 F.2d at 746. Here, by necessity, that means awarding Pope a new trial. *See id.*; *Westbrook*, 259 F.2d at 217 (awarding a new trial when the petitioner was "denied his right of full appeal due to no fault of his own . . . and because of a condition not created by the state and which it is powerless to remedy"); *cf. Kyles*, 847 N.W.2d at 812 ("We acknowledge that the remedy for the denial of effective assistance of counsel is to restore the defendant to the position he or she would have occupied but for counsel's ineffectiveness.").

Far from the "inapt" red herring the State suggests, *Griffin* and the cases it spawned confirm that the State was affirmatively obligated to provide Pope with transcripts or their equivalent as part of a meaningful appeal. Just like the criminal defendants featured throughout the *Griffin* line, the State here denied Pope that right. The State's suggestion that Pope had to be satisfied with a perfunctory appeal, without transcripts, ignores the state-created predicament in which Pope found himself and the long line of Supreme Court cases confirming Pope's rights.

**B.     The State Cannot Excuse Its Constitutional Failings by Blaming Pope for the Consequences of Appointed Counsel's "Egregious" Misconduct.**

Toward the end of its habeas briefing, the State gets around to acknowledging that "Pope had the right to free transcripts on direct review." (ECF No. 11 at 36.) Even then, however, it seeks to escape the consequences of this acknowledgment by maintaining that Wisconsin did not deny him those transcripts, rather it was his own fault. (*Id.*) The State argues that Pope's "untimely

extension motion in 1997, and his inaction between 2003 and 2014" made the transcripts unavailable. (*Id.* at 37.) The Wisconsin Supreme Court adopted this same reasoning. *See Pope*, 936 N.W.2d at 618-21 (under the heading: "The Transcript is Unavailable Due to Pope's Delay."). But, even applying the deference due under AEDPA, this holding cannot stand in the face of the factual record and United States Supreme Court precedent.

The State's own concessions undermine its position. It does not dispute that Pope was denied the effective assistance of counsel when, two decades ago, his trial counsel abandoned him without filing the Notice of Intent necessary to initiate his appeal. "Abandonment is a *per se* violation of the sixth amendment." *Castellanos*, 26 F.3d at 718 (citing *United States v. Cronic*, 466 U.S. 548, 658-59 (1984)). And that violation had further constitutional consequences. Because the State denied him effective assistance of counsel, Pope never filed his Notice of Intent. Because the Notice of Intent was never filed, the public defender never appointed postconviction/appellate counsel. And without appellate counsel to guide him through Wisconsin's postconviction procedures, Pope lost both his appellate rights and the transcripts he needed to prosecute his appeal. As already discussed, the Sixth Amendment guarantees the right to effective assistance of counsel on direct appeal. *See Evitts*, 469 U.S. at 396. Pope was left to suffer these results and had to try to remedy their effects on his own.

The Due Process Clause does not permit this. A State cannot deny a criminal defendant constitutionally guaranteed assistance of counsel and then fault him when he proves unable to properly litigate his own case. When the State denies a defendant his right to counsel, the State, not the marooned criminal defendant, assumes the burden of any predictable mistakes. *See Murray v. Carrier*, 477 U.S. 478, 488 (1986) (the responsibility for procedural errors committed by unrepresented criminal defendants is "*imputed to the State*") (emphasis added).

Yet the State attempts to draw a distinction between the Sixth Amendment violation Pope suffered, for which it acknowledges he is entitled to "automatic reinstatement of the right to an appeal," (ECF No. 11 at 24), and his subsequent delay in bringing a motion for an extension of time to file his Notice of Intent, which it argues justifies holding him personally responsible for the unavailability of his trial transcripts. Under this logic, which the Wisconsin Supreme Court's decision implicitly sanctions, Pope, although abandoned by counsel, should not only have more quickly oriented himself, he should have also known to secure and preserve copies of his trial transcripts. *See Pope*, 936 N.W.2d at 619. And he should have accomplished this while indigent

and incarcerated, familiarizing himself with Wisconsin's transcript preservation procedures and preemptively ordering his transcripts prior to the expiration of the 10-year window in which court reporters are required to retain their trial notes. *Id.*[3] Thus, when Pope failed to do so, the State was excused of its own constitutional obligation to provide him free transcripts. The State cannot place such a burden on an indigent defendant that *it* has denied competent representation. *See Murray*, 477 U.S. at 488; *Evitts*, 469 U.S. at 396.

In similar fashion, the Wisconsin Supreme Court invoked the "law of the case" doctrine to justify holding Pope responsible for his missing transcripts. *Pope*, 936 N.W.2d at 619. It highlighted the 1997 Wisconsin Court of Appeals decision, which concluded: "Pope has failed to provide the court with a sufficient explanation as to why, when counsel failed to initiate postconviction proceedings timely, he did not attempt to commence postconviction proceedings on his own." *Id.* at 611. Left (improperly) without representation, Pope never appealed from this order. And that failure to appeal, the majority held, established that he indefensibly "sat on his rights for 14 months" and did not do "everything that reasonably could be expected in order to perfect his appeal." *Id.* at 618-19 (quoting *Perry*, 401 N.W.2d at 755). In other words, his trial transcripts were "unavailable due to his [own] delay." *Id.* at 619.

But this effort to skewer Pope on a prior adjudication rendered while he was denied his right to postconviction counsel has its own problems. It again fails to account for the State's admission that Pope's trial counsel was constitutionally ineffective, entitling him to an extension of his time to file the Notice of Intent and reinstatement of his direct appeal rights. That admission undid the very court of appeals decision on which the State and the Wisconsin Supreme Court majority grounded their "law of the case" analyses. In other words, the ruling the State seeks to use against Pope now is one that it conceded by stipulation did not bind him in 2017.

Invoking the 1997 ruling is also inconsistent with the subsequently developed factual record. During the remand of Pope's *Knight* petition, the circuit court found facts inconsistent with the 1997 ruling. The circuit court specifically found that Pope "had been attempting to reinstate his direct appeal rights since 1996." *Id.* at 626 (Bradley, J., dissenting). It also determined that he had twice, within the 20-day window to file his notice of intent, written his attorney "in consider[ation] of [his] appeal and transcripts." (ECF No. 7-4 at 81.) As the dissenting opinion noted, without response from the majority, these more recent factual findings are themselves "law

---

[3] SCR 72.01(47) requires court reporters to retain a verbatim record of in-court proceedings for 10 years.

of the case unless an appellate court [dubs them] clearly erroneous, which no court, including [the Wisconsin Supreme Court] has done." *Pope*, 936 N.W.2d at 626 n.6 (Bradley, J., dissenting).

On habeas, the State also faults Pope for not challenging the 1997 Court of Appeals order during this reinstated 2017 appeal. (ECF No. 11 at 22.) At the time of the 2017 appeal, the State had already stipulated to extend the time for Pope to file his Notice of Intent and thereby reinstated his right to a direct appeal. That agreed-upon relief was the very remedy the 1997 Court Appeal order had denied him. It would have been nonsensical for Pope in 2017 to challenge a 20-year-old ruling denying him a form of relief that the State was now agreeing to provide him.

The record and law confirm that Pope cannot be blamed for the unavailability of his transcripts on appeal.[4] It is no defense to say that he waived his right to it through untimely *pro se* motion practice. That is precisely the kind of mistake the Sixth Amendment right to counsel exists to prevent. No case demonstrates this better than *Betts v. Litscher*, 241 F.3d 594 (7th Cir. 2001). In *Betts*, the Seventh Circuit took the State of Wisconsin to task for using procedural roadblocks to deny an indigent defendant his basic right to a direct appeal. Rather than performing the constitutionally mandated *Anders* process, a criminal defendant's appointed lawyer instead represented that her client "had 'declined an opportunity to have a no-merit report filed . . . and elected to proceed pro se with an appeal.'" *Id.* at 595. In fact, the defendant had done no such thing. *Id.* After counsel withdrew, the defendant "peppered the court with requests for a lawyer to assist him," but "[e]very request was denied." *Id.* "He persisted, only to be met by judicial declarations that he had forfeited his right to counsel (or his right to contest his lawyers' performance) by not taking one or another step required by state law." *Id.* at 596. The Wisconsin courts also "ruled that *all* of his requests [for relief], including the demand for counsel on direct appeal, had been forfeited." *Id.* The defendant sought a federal writ of habeas corpus, but "a magistrate judge . . . denied [his] petition." *Id.* The Seventh Circuit reversed, noting that instead of providing the defendant his constitutional right to the assistance of counsel on direct appeal, the state had given "him the runaround." *Id.* The Court of Appeals rebuked the State for allowing counsel to withdraw unilaterally only to then use the defendant's "ensuing procedural

---

[4] Under 28 U.S.C. Section 2254(d)(2), this Court is empowered to issue a writ of habeas corpus if state-court adjudication of a petitioner's claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented." While the Court believes the Wisconsin Supreme Court's contravention of federal law is the more direct ground for relief, it could also grant Pope's petition under Section 2254(d)(2) based on this unreasonable determination of the facts in contradiction of the undisturbed findings of the circuit court.

shortcomings to block all avenues of relief." *Id.* It explained that a "principal reason why defendants are entitled to counsel on direct appeal is so that they will not make the kind of procedural errors that unrepresented defendants tend to commit" and that the "Constitution does not permit a state to ensnare an unrepresented defendant in his own errors and thus foreclose access to counsel." *Id.*

The State appreciates the similarities between *Betts* and Pope's case, but it emphasizes that, in *Betts*, the remedy was reinstatement of direct appeal rights, a remedy Wisconsin has already afforded Pope. (ECF No. 11 at 19-20.) This narrow reading of *Betts* again ignores the scope of the underlying violations of Pope's constitutional rights and confuses the remedies available for such violations. As explained above, appointed counsel's decision to abandon Pope led not only to the loss of his direct appeal rights but also to the loss of his trial transcripts. Counsel's ineffectiveness falls at the feet of the State, not Pope. *See Murray*, 477 U.S. at 488. And, contrary to the State's suggestion, *Betts* does not limit the relief this Court is empowered to award. In *Betts*, the Seventh Circuit ordered a reinstated appeal to "restore[]" the defendant "to the position he would have occupied had the state judiciary [acted] properly." *Betts*, 241 F.3d at 597. In most circumstances, reinstatement of a direct appeal will be the right remedy, but that does not mean it is the only one permitted, especially where, as here, that remedy leaves the defendant in a worse position due to his counsel's error. Indeed, the Seventh Circuit has shown that different remedies may be required. *See Westbrook*, 259 F.2d at 219-20 (directing State court to vacate conviction and grant a new trial); *Sutton* (ordering vacatur of state court conviction and "grant [of] a new trial within six months.") In Pope's case, mere reinstatement of his direct appeal without transcripts left him to suffer for his appointed counsel's constitutional failings. Again, the State, not Pope, must bear the consequences for those failings.

## II. The Wisconsin Supreme Court's Extension of the *Perry/DeLeon* Procedure to Pope's Situation Is Not an Adequate and Independent State Law Ground that Precludes Federal Habeas Review.

Instead of addressing the federal constitutional dimensions of Pope's predicament, the Wisconsin Supreme Court majority turned to a state procedural rule, Wisconsin's *Perry/DeLeon* procedure, to deny him a meaningful remedy for his appointed counsel's failings. Although this rule had only previously applied when a defendant complained that portions of his trial transcripts were missing, the majority extended the rule to Pope, who had been denied his trial transcripts in their entirety. The majority also refused Pope's request to carve out an exception to the

requirement that he "assert a facially valid claim of arguably prejudicial error," even though doing so was essentially impossible due to his counsel's misconduct. *Pope*, 936 N.W.2d at 618. This extension of the *Perry/DeLeon* procedure stopped Pope's appeal dead in its tracks, leaving him with a reinstated appeal but without any ability to effectuate it in a meaningful fashion.

The majority's reliance on a State law procedural rule would, in most circumstances, insulate its decision from federal habeas review. Where a defendant's federal constitutional claim is defaulted based on "an adequate and independent procedural ground, federal habeas review is at an end unless a petitioner can show cause for the default and prejudice attributable thereto." *Johnson v. Thurmer*, 624 F.3d 786, 789 (7th Cir. 2010) (citation omitted). But, as applied to Pope, the *Perry/DeLeon* procedure is not independent and adequate, and it, therefore, does not preclude habeas relief.

"A state procedural ground is independent if it was expressly relied on by the state court in rejecting the claim, and it is adequate if it is a clearly established and consistently followed state practice at the time it is applied." *Id.* (citations omitted). "The adequacy of state procedural bars to the assertion of federal questions is not within the State's prerogative to finally decide; rather, adequacy is itself a federal question." *Cone*, 556 U.S. at 465 (quotations omitted). Given the contours of Pope's right to a meaningful appeal, with effective appointed counsel, supported by transcripts, Wisconsin cannot apply its expanded *Perry/DeLeon* procedure to him in a constitutionally adequate fashion.

To begin, the *Perry/DeLeon* procedure could be independent and adequate state law ground in most circumstances. Derived from *State v. Perry*, 401 N.W.2d 748 (Wis. 1987) and *State v. DeLeon*, 377 N.W.2d 635 (Wis. Ct. App. 1985), the procedure governs the remedy available to a criminal defendant when some portion of his trial records are missing. *Pope*, 936 N.W.2d at 614. According to the procedure, to obtain a remedy (reconstruction of transcripts or a new trial), the defendant must first make a facially valid claim that the missing record contains evidence of an arguably prejudicial error. *Id.* at 614-15. If he does, the trial court then considers the possibility of record reconstruction. *Id.* at 615. If that proves infeasible, the defendant is entitled to a new trial. *Id.* Nothing about this is necessarily problematic.

But the Wisconsin Supreme Court's extension of the *Perry/DeLeon* procedure to Pope was indeed problematic and for at least two reasons. First, as explained in *Page v. Frank*, 343 F.3d 901, 909 (7th Cir. 2003), a State procedural ground is not "adequate" if it sacrifices constitutional

rights. In *Page*, the Seventh Circuit held Wisconsin's *Escalona-Naranjo* rule inadequate where it essentially deprived a criminal defendant of his Sixth Amendment right to counsel on appeal absent any evidence of waiver. *Id.* In that case, the State of Wisconsin argued that, under the *Escalona-Naranjo* rule a criminal defendant had waived his claim to ineffective assistance of counsel when he failed to raise it in his *pro se* response to an *Anders* brief. *Id.* The Seventh Circuit rejected this argument, finding that the procedural rule could not waive the Sixth Amendment right to effective assistance of counsel on appeal. *Id.*

Applied to Pope, the *Perry/DeLeon* procedure similarly imperils Sixth Amendment rights, this time to trial transcripts and effective assistance of counsel on a meaningful appeal. Prior to Pope, Wisconsin had never enforced *Perry/DeLeon* against a defendant denied the *entirety* of his trial transcripts. *Pope*, 936 N.W.2d at 616. In extending the procedure to the facts of Pope's case, the majority emphasized the levity of the defendant's burden. *Id.* at 617 ("[R]ather than setting an exceptional burden, the . . . procedure merely requires some arguable showing before the efforts of reconstruction are undertaken."). But that burden even if light for most defendants was impossible for Pope to satisfy, and impossible specifically because of failures of his appointed counsel. Those failures are constitutionally imputed to the State. The State cannot enact a procedural rule that absolves it of responsibility for its own constitutional violations. As applied to Pope, the *Perry/DeLeon* procedure does just that.[5] It is, therefore, not an adequate state law ground and cannot prevent habeas review in this Court. *See Page*, 343 F.3d at 909 (a procedural rule is not adequate if it imperils constitutional rights).

The *Perry/DeLeon* procedure is also inadequate for a second reason. It was not "firmly established" when invoked against Pope. "For a procedural default to be considered an adequate state law ground, the rule under which it is invoked must have been firmly established and regularly followed as of the time when the procedural default occurred." *Richardson v. Lemke*, 745 F.3d 258, 271 (7th Cir. 2014) (citing *James v. Kentucky*, 466 U.S. 341, 348-49 (1984)). "A basis of decision applied infrequently, unexpectedly, or freakishly may be inadequate." *Prihoda v. McCaughtry*, 910 F.2d 1379, 1383 (7th Cir. 1990) (citing *Johnson v. Mississippi*, 486 U.S. 578, 587-89 (1988)). The idea is "to prevent federal courts from interfering with a State's application of its own firmly established, consistently followed, constitutionally proper procedural rules." *Trevino v. Thaler*, 569 U.S. 413, 421 (2013). Previously, Wisconsin applied *Perry/DeLeon* only

---

[5] *See supra* Part I.

where a defendant sought a new trial because portions of his trial transcripts were missing. *See Pope*, 936 N.W.2d at 616. In those situations, the defendant was required to assert that the missing portions of his transcripts contained some arguably prejudicial error. In extending the procedure to cover Pope's circumstances, the majority went beyond the obvious implications of prior decisions, which envisioned "lacunae of the record," not the absence of a record in its entirety. *Perry*, 401 N.W.2d at 755. And "[a] state procedural rule is not an adequate ground for finding default if the prisoner could not fairly be deemed to have been apprised of its existence at the time [he] acted." *Braun v. Powell*, 227 F.3d 908, 912 (7th Cir. 2000) (quotations omitted). Pope had little reason to suspect Wisconsin would apply *Perry/DeLeon*, based on an inaccurate recitation of the facts, to transform his direct appeal into a Catch-22. Thus, *Perry/DeLeon*, as applied here, is inadequate.[6]

The State analogizes Pope's burden under the *Perry/DeLeon* procedure to the one federal appellants with missing transcripts bear under Federal Rule of Appellate Procedure 10(c). (ECF No. 11 at 30-32.) It contends that if Rule 10(c) does not violate due process, neither does *Perry/DeLeon*. This analogy misapprehends both the requirements of Rule 10(c) and the situation in which the State left Pope.

Rule 10(c) provides:

> If the transcript of a hearing or trial is unavailable, the appellant may prepare a statement of the evidence or proceedings from the best available means, including the appellant's recollection. The statement must be served on the appellee, who may serve objections or proposed amendments within 14 days after being served. The statement and any objections or proposed amendments must then be submitted to the district court for settlement and approval. As settled and approved, the statement must be included by the district clerk in the record on appeal.

Fed. R. App. P. 10(c). "Courts of appeals have consistently held that when an appellant chooses not to avail him or herself of the procedure available in Rule 10(c) for recreating the trial record, he or she cannot then claim on appeal that the loss of trial records, without more, necessitates a new trial." *Roberts v. Ferman*, 826 F.3d 117, 124 (3d Cir. 2016).

---

[6] This does not mean that the *Perry/DeLeon* procedure is never an independent and adequate state procedural rule. A rule may be independent and adequate in certain circumstances and not in others. *See Page*, 343 F.3d at 909 (holding Wisconsin's *Escalona-Naranjo* rule inadequate as applied in a particular circumstance).

Here, neither Pope nor his counsel have repudiated any effort at reconstruction. On the contrary, the record confirms that counsel tried to reconstruct the record, but she could not, specifically because errors the State made in the first instance prolonged prosecution of Pope's direct appeal. (*See* ECF No. 12 at 10-11.) Indeed, the Milwaukee County Circuit Court specifically found that reconstruction was impossible. (*Id.* at 10.) The State now argues that reconstruction "was not impossible, as the circuit court erroneously held." (ECF No. 11 at 36.) But that factual finding remains undisturbed on the record and the State has not shown any basis to upset it on habeas.

Moreover, Rule 10(c) does not permit federal courts to behave the way the Wisconsin Supreme Court did in Pope's case. The State relies heavily on *United States v. Savage*, 970 F.3d 217 (3d Cir. 2020), in which the Third Circuit addressed a criminal defendant's argument that "it would be futile to pursue Rule 10 reconstruction since his attorneys on appeal did not participate in his trial and therefore [could not] be expected to know what went on in the untranscribed conferences." *Id.* at 240. The court held that "Rule 10 provides for that eventuality: a defendant may submit a declaration saying he does not remember what happened, passing the ball to the government to document its recollection and giving the defendant a chance to object." *Id.* The *Perry/DeLeon* procedure offered Pope no such option.

Last, Rule 10(c) is typically invoked in conjunction with the Court Reporter Act, 28 U.S.C. § 753(b). *See United States v. Nolan*, 910 F.2d 1553 (7th Cir. 1990). "The duty to comply with [that statute] lies with the court, not the parties." *Id.* at 1560. By contrast, the duty to provide a "meaningful appeal," including the duty to provide transcripts or their substantial equivalent, is one that belongs to the State. The State's ongoing efforts to evade that burden cannot stand.

## CONCLUSION

The State of Wisconsin denied Robert Pope assistance of counsel on appeal, and for the last 27 years, has seized upon the errors he made while operating *pro se* to deny him relief. Eventually, the State conceded that Pope's rights were violated. But when it realized that the consequence of acknowledging those violations was not simply that Pope would get a new appeal, but that he would receive a new trial, the State tried to wriggle out from its prior acknowledgment. The State now insists Pope is entitled to a reinstated direct appeal, but he must undertake that appeal without the transcripts necessary to make it meaningful. It argues this is an unfortunate but insoluble predicament caused by Pope's own failure. This argument ignores the underlying

misconduct of the counsel, whom the state appointed for him in 1996 and whose errors fall at the feet of the State. The State's argument also misapprehends the remedies available on habeas. The Court will order the State to provide Pope with a new trial within six month or free him as a remedy for its having deprived him of his constitutional rights for more than two and a half decades.

Accordingly,

**IT IS HEREBY ORDERED** that Pope's petition for writ of habeas corpus pursuant to 28 U.S.C. Section 2254, ECF No. 1, is **GRANTED**. The writ shall issue. Upon the failure of the circuit court to vacate the judgment of conviction and grant a new trial within six months after the date of actual physical delivery of Pope to the custody of the Wisconsin court, Pope shall be finally discharged from custody.

**IT IS FURTHER ORDERED** that Respondent's Motion to Supplement the Record and Amend the Answer, ECF No. 15, is **DENIED** as moot.

Dated at Milwaukee, Wisconsin on September 1, 2023.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge